# ANDERSON-GREGORY CO., INC. v. LUKE LEA, JR.
## —370 S.W. (2d) 934.

Middle Section.  June 28, 1963.

Certiorari Denied by Supreme Court October 11, 1963.

614

Manier, Crouch, White & Herod and Olin White, Nashville, for plaintiff in error.

M. Perry Nochlin, Nashville, for defendant in error.

HUMPHREYS, J. Luke Lea, Jr., plaintiff below, sued defendant, Anderson-Gregory Co., Inc., alleging that he was engaged in business as a contractor moving crushed stone, creek bank gravel, and chert, and supplying same for use by building and road contractors. That defendant was a road building contractor, and in March, 1958, they entered into an oral contract whereby plaintiff "agreed to furnish certain equipment for the transportation and production of gravel to be used by the defendant * * * and further the plaintiff would supervise the removing of the gravel from the pit and delivery * * *"; that he was to receive sixty-five cents a cubic yard for the gravel loaded on defendant's trucks as it was screened, or eighty cents a cubic yard if he had to stockpile it. But that without any excuse or justification

defendant notified plaintiff he would be unable to carry out the contract. Thereafter, being unable to effect a settlement plaintiff sued.

Defendant filed special pleas of non assumpsit and nil debit, together with a plea of the general issue. In addition, it pleaded specially the portion of the Statute of Frauds contained in secs. 23-201 and 47-1204, T.C.A. Defendant also filed a cross action against plaintiff alleging that if there was a contract, plaintiff had breached it, compelling defendant to purchase crushed limestone at a price far in excess of the price for gravel quoted by plaintiff to defendant, for which plaintiff was liable to defendant.

These issues were tried by a jury which returned a verdict in favor of plaintiff for $7,500.00 damages, and judgment was entered accordingly.

Defendant has appealed in error to this Court and assigned errors which raise three questions: (1) whether there is any evidence to support the verdict; (2) whether the special pleas in bar based on the Code sections mentioned are good; (3) whether the damages recovered are speculative.

With respect to whether there is any evidence to support the verdict, we point out again, as we have so many times, that in passing upon such a question we must take the strongest legitimate view of the testimony in favor of the successful party, and discard all countervailing testimony, because the jury, which has the exclusive province of passing upon the credibility of witnesses, has by its verdict, resolved all conflicts in favor of the winning party. Illinois Central Railroad Co. v. Abernathy, 106 Tenn. 722, 64 S.W. 3; Tennessee Digest,

Vol. 2, Appeal and Error, sec. 989, pp. 740, 742. In addition, it is settled by innumerable cases that the credibility of witnesses is for the jury, and not for an appellate court. (See same Digest, sec. 994).

■ These being the rules, which we feel constrained to emphasize in view of the excellent brief and the powerful argument made by defendant in this Court, there is nothing we can do but overrule the assignments raising this question. It cannot be denied that plaintiff Lea testified to facts and circumstances which, if the jury accepted as true, gave rise to an oral contract between himself and defendant substantially as alleged in his declaration. Since the jury chose to believe this testimony, rather than that of defendant to the contrary, there is nothing this Court can do about it.

With respect to the second question, whether the special pleas in bar based on the two statutes relied on, secs. 23-201 and 47-1204, T.C.A., should have been sustained and the suit dismissed, we are of the opinion this question must be answered in the negative.

T.C.A. sec. 23-201 provides in relevant part that no action shall be brought: "Upon any agreement or contract which is not to be performed within the space of one (1) year from the making thereof; Unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized."

■ This provision of the statute has been construed many times, and it is now well settled that if a contract, when made, was in reality capable of full and bona fide

performance within the year, it is to be considered as not within the statute. East Tennessee V. & Gr. Co. v. Staub, 75 Tenn. 397, 398. And in Johnston v. Cincinnati N. O. & T. P. R. Co., 146 Tenn. 135, 240 S.W. 429, the Court said that the statute provision extends only to contracts in which, by express understanding of the parties, the contract is not to be performed within the year.

■ The oral contract proved by the plaintiff was in reality capable of a full and bona fide performance within a year, and contained no express or necessarily implied understanding that it was not to be so performed. This being the fact, and the rule being as afore stated, the plea in bar based on T.C.A. sec. 23-201 is not good.

T.C.A. sec. 47-1204 provides as follows:

"Statute of frauds.—A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars ($500) or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

Although this provision is now found in the Uniform Sale of Goods Act, it was originally the 17th section of a statute enacted in England in 1676, entitled "An Act for the prevention of frauds and perjuries," and commonly known as Lord Tenterden's Act. As such, it has been construed time and again, and rules have evolved construing it known as the English Rule, the New York Rule, and the Massachusetts Rule.

25 A.L.R.(2d) 678 is quoted by the defendant as authority for the proposition the Massachusetts Rule was substantially adopted by the Uniform Sales Act. The same authority, page 690, sec. b8, is quoted on this subject as follows:

"The need was met by the widespread adoption of the Uniform Sales Act, which, in requiring a written contract where the goods or choses in action exceed a certain value, unless the buyer accepts a part thereof and actually receives the same or gives something in earnest to bind the contract or in part payment, declares that these provisions shall apply to every contract to sell or sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be actually made, procured, or provided, or fit or ready for delivery, or that some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller 'especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business,' these provisions shall not apply. See Uniform Sales Act sec. 4(2)."

■ We are satisfied from this and other authorities that by the adoption of the Uniform Sales Act it was intended that this provision of our statute should be given the "Massachusetts Rule" construction, and that contracts which require a party to produce goods especially for the buyer which are not suitable for sale to others in the ordinary course of seller's business are not within the act. 37 C.J.S. Frauds, Statute of sec. 141, p. 628; 49 Am.Jur., Statute of Frauds, sec. 257, p. 570.

■ When the contract sued and recovered on in this case is tested by this rule it is evident it is not within this statute. The contract sued on, and which the jury validated by its verdict, was proved to be substantially as alleged in the declaration [1] and such a contract is a contract for labor and not one for the sale of goods such as would be within the statute, under the Uniform Sales Act and the Massachusetts Rule.

Entertaining these views, we overrule the assignments of error based on the statutes pleaded specially in bar.

■ With respect to the third assignment of error, whether the damages awarded were speculative, we are of the opinion this assignment is good to the extent the damages awarded are based on the profit plaintiff might have made if the contract had been carried out, and that his damages should be limited to that damage actually suffered.

■■ In the first place, it is the rule that speculative damages cannot be recovered. And that, generally speaking, damages for breach of contract are limited to the natural and proximate consequences thereof. Central National Insurance Co. v. Horne, 45 Tenn.App. 711, 326 S.W.(2d) 141. The only evidence offered with respect to prospective profits on the contract was that of plain-

[1] "That on or about March 28, 1958, the State of Tennessee acting by and through its Highway Department was accepting bids for the Montgomery County Job designated as Highway Department Job No. F-013-2-127. That on or about March 27, 1958, the plaintiff and the defendant entered into an oral contract whereby the plaintiff agreed to furnish certain equipment for the transportation and production of gravel to be used by the defendant on said job and further the plaintiff would supervise the removing of the gravel from the pit and delivery to aforesaid described job. That as consideration for the plaintiff's doing said things, the defendant agreed to pay the plaintiff the sum of Sixty-Five (65¢) Cents per CY loaded on AG Trucks as it was screened or Eighty (80¢) Cents stock piled. That it would take approximately 83,000 cubic yards of gravel to complete the aforesaid job."

tiff, and in view of his testimony he had had no experience with dredging gravel from a river and preparing it for use on a highway, it is clear that as to a major part of the material to be furnished plaintiff had no information on which to base his estimation of profits. (The conjecture of defendant as to a possible profit of five cents a cubic yard is not adequate evidence.)

In the second place, it is the rule, as stated in the case last cited, Central National Insurance Co. v. Horne, that in an action for a breach of contract the injured party is bound to use all proper means and efforts to protect himself from loss, and can charge the other party only for such damages as, by reasonable endeavors on his part he could not prevent.

In the absence of any proof of such reasonable endeavors, and in the light of plaintiff's total lack of experience as to profits to be made from furnishing gravel dredged from a river, we are not satisfied he should have a judgment for prospective profits.

It seems to us that when a contract though of some magnitude is informal, and although involving production of personal property is not within the Statute of Frauds because it is a contract for labor, and nothing has been produced under such a contract but only preparation to produce has been made, that only in a clear case, where the proof of profits is devoid of any element of speculation and shows all proper means taken to minimize loss should a recovery be allowed for prospective profits. This case fails this test.

Accordingly, we remit so much of the judgment as was for prospective profits, $3,672.00, and award plaintiff

Lea a judgment here of $3,828.00. Otherwise, the judgment of the Circuit Court is affirmed. The costs of the appeal are divided.

Shriver and Chattin, JJ., concurring.